**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| SUHADOLNIK , MAUREEN | ) | 15-71606 |
| | ) | (Chapter 7) |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | |
| NANCY J. GARGULA, | ) | |
| United States Trustee for Region 10, | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | Adversary Case |
| | ) | |
| | ) | |
| MAUREEN SUHADOLNIK, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## COMPLAINT OBJECTING TO THE ENTRY OF A DISCHARGE

NANCY J. GARGULA, United States Trustee for Region 10 ("UST" or "Plaintiff"), by her Attorney and Assistant United States Trustee Timothy E. Ruppel, respectfully requests that this Court enter an order denying the entry of a discharge for Maureen Suhadolnik ("Defendant") pursuant to §§ 727(a)(2), 727(a)(3), 727(a)(4), 727(a)(5) and 727(a)(7) of the Bankruptcy Code 11 U.S.C. and in support thereof states as follows:

## JURISDICTION, VENUE AND STANDING

1. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(a) and 11 U.S.C. § 727(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (J) and (O). Venue is appropriate in this court. 28 U.S.C. § 1409(a).

2. The UST has standing to bring this complaint seeking to deny the Defendant a discharge. 11 U.S.C. §§ 307 and 727(c)(1).

3. Based upon the Plaintiff's knowledge and belief, as of the date of the petition, the Defendant resides in Springfield Sangamon County Illinois and within the boundaries of the Central District of Illinois.

4. Defendant's chapter 7 § 341 Meeting of Creditors was originally scheduled for December 7, 2015 resulting in a deadline for the filing of an objection of February 5, 2016. The UST sought and obtained an extension of the deadline for her to file an objection to March 4, 2016. This Complaint has been timely filed.

**FACTS BACKGROUND COMMON TO ALL COUNTS**

5. Gold's Gym of Springfield Inc. ("Gold's Gym") is an Illinois corporation which operated a gym and exercise facility in Springfield Illinois.

6. On March 28, 2014, Gold's Gym filed its voluntary petition seeking relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Central District of Illinois, Bankruptcy Case #14-70556 ("Gold's Gym bankruptcy").

7. The Defendant signed the petition in the Gold's Gym bankruptcy on behalf of Gold's Gym (Gold's Gym bankruptcy Doc #1) as its president and was Gold's Gym's sole shareholder (Gold's Gym bankruptcy Doc #19).

8. While Gold's Gym operated under the protection of chapter 11:

[A] the Defendant appeared and testified on behalf of Gold's Gym at its §341 meeting of creditors.

[B] Gold's Gym prepared and filed reports which required Gold's Gym to accurately disclose financial transactions and to truthfully make representations about its business operations during the relevant month ("Gold's Gym's Monthly Operating Reports").

[C] Gold's Gym maintained an estate operating account in which estate funds were deposited and from which estate disbursements were made ("Gold's Gym's Operating Account").

[D] as Gold's Gym's president, the Defendant signed and attested to, under the penalty of perjury, the accuracy and truthfulness of the information and representations made in Gold's Gym's Monthly Operating Reports.

[E] Gold's Gym sought Court authorization for its agreement (363 Sale Agreement) to sell all of Gold's Gyms assets to Nas'Anno Corporation ("Nas'Anno") for $1.78 million payable $50,000 at the execution of the agreement and the balance at closing ("363 Sale"). (Gold's Gym bankruptcy Doc #256).

[F] a 363 Sale agreement was dated April 17, 2015 and executed by Mr. John Nasruddin ("Nasruddin") for Nas'Anno and by the Defendant for Gold's Gym (Gold's Gym bankruptcy Doc # 276) and provided for a closing on the 363 Sale within 15 days of obtaining the Court's approval.

[G] the Court entered an Order authorizing the 363 Sale on April 27, 2015 (Gold's Gym bankruptcy Doc # 277).

[H] Gold's Gym did not receive either the $50,000 down payment or the balance due under the 363 Sale Agreement.

[I] the Defendant and Nasruddin deliberated the future ownership, management and capitalization of a business venture involving their operation of a gym at the previous Gold's Gym facility (joint venture). Dr. Stephen Spencer (Spencer) joined the joint venture on or before May 18, 2015.

[J] the terms of the joint venture were, in part, memorialized in a Memorandum of Understanding between Nasruddin and the Defendant and/or an Agreement signed by Nasruddin, Spencer and the Defendant and included, in part:

(i) **capital contributions** to be made by Nasruddin of 2.5 million, by Spencer of approximately $109,000, and by the Defendant of approximately $25,000.

(ii) **joint ownership and/or management** by Nasruddin and/or Spencer and/or the Defendant.

9. The Gold's Gym bankruptcy was converted to a chapter 7 on October 6, 2015 (Gold's Gym bankruptcy Doc #351). Mariann Pogge was duly appointed the Chapter 7 Trustee in the Gold's Gym bankruptcy, and she continues to serve in that capacity (Gold's Gym bankruptcy Doc #352).

10. On October 20, 2015, the Defendant filed in the Central District of Illinois her voluntary petition seeking relief under chapter 7 of the United States Bankruptcy Code bankruptcy case number 15-71606. ("Suhadolnik bankruptcy"). In the Suhadolnik bankruptcy the Defendant, under the penalty of perjury, affirmed the truthfulness and accuracy of the data and representations made in her Petition, her Schedules (A thru J), and in her Statement of Financial Affairs (SoFA). (Suhadolnik bankruptcy Doc #1).

11. James Inghram was appointed the chapter 7 Trustee in the Suhadolnik bankruptcy, and he continues to serve in that capacity (Suhadolnik bankruptcy Doc #6).

12. The purpose of § 727(a)(7) is to provide a mechanism for denying an individual debtor a discharge when the debtor engages in certain objectionable conduct in a case involving a corporation of which the individual debtor controls the corporation. *In re Lopez*, 532 B.R. 140 (C.D. Cal 2015); *In re Krehl*, 86 F.3d 737, 741 (7th Cir.1996); and *In re Kyung S. Song* 449 B.R. 84 (Bankr. N.D. Cal. 2011).

13. Pursuant to 11 U.S. C. § 101(31)(A), in relevant parts, an insider includes, if the debtor is an individual:

> [a] corporation of which the debtor is a director, officer, or person in control.
> *11 U.S. C. §§ (31) (A) (iv).*

14. The Defendant is the debtor in the Suhladonik bankruptcy and is an individual.

15. The Defendant, at all times relevant herein, was in control of Gold's Gym and as such, for all purposes herein, Gold's Gym is and was an insider as it relates to the Defendant, the debtor in the Suhadolnik bankruptcy.

**COUNT I – FALSE OATH BY INSIDER UNDER**
**11 U.S.C. § 727(a)(4)(A) AND 11 U.S.C § 727(a)(7)**
**(monthly operating reports)**

16. The UST realleges and incorporates herein all of the allegations contained in paragraphs 1 through 15 above.

17. Pursuant to 11 U.S.C. § 727(a)(4) in relevant parts: The court shall grant the debtor a discharge, unless –

> the debtor knowingly and fraudulently in or in connection with the case made a false oath or account; *11 U.S.C. § 727(a)(4)(A)*

18. The purpose of *11 U.S.C. § 727(a)(4)* is to provide a mechanism to enforce a debtor's duty to disclose reliable information to those interested in the administration of the estate. *In re Clarke*, 332 B.R. 865 (CD Il. 2005). To prevail the plaintiff must establish that the debtor made a material statement under oath, that the statement was false, that the debtor knew the statement was false and that the debtor intended to deceive. While a debtor's discharge should not be taken for an inadvertent statement, the requisite intent can be inferred from the circumstances and facts surrounding the case. *Stamat vs Neary* 635 F.3rd 974 (7th Cir. 2011).

19. Pursuant to 11 U.S.C. § 727(a)(7), in relevant parts, the court shall grant the debtor a discharge unless:

> the debtor has committed any act specified in paragraph …(4) [11 U.S.C. § 727(a)(4)] of this subsection on or within one year before the date of the filing of the petition, …in connection with another case, under this title or under the Bankruptcy Act, concerning an insider. *11 U.S.C. § 727(a)(7)*

20. Gold's Gym's Monthly Operating Reports for the filing periods of February 2015 (Gold's Gym bankruptcy Doc # 298 filed June 2, 2015), May 2015 (Gold's Gym bankruptcy Doc # 318 filed August 6, 2015), June 2015 (Gold's Gym bankruptcy Doc # 319 filed August 6, 2015), July 2015 (Gold's Gym bankruptcy Doc # 346 filed October 5, 2015) and August 2015 (Gold's Gym bankruptcy Doc #347 filed on October 5, 2015)[1] included the following representations and/or accountings ("representations") made by Gold's Gym and affirmed as true and accurate, under the threat of perjury by the Defendant:

> [A]…[that the only] payments made [by Gold's Gym] to any principal, executive or insider during the reporting period …[the month of February 2015](including

[1] The monthly operating reports were filed with the Court without the related bank statements. The reports and the bank statements were provided to the UST on or near the date filed with the Court.

draws, cash withdrawals, dividends, loans or gross salaries) were:

$1,564 paid to Maureen Suhadolnik salary on 02/05/15
$1,564 paid to Maureen Suhadolnik salary on 02/20/15
(February Monthly Operating Report pages 10 & 11)

[B] That the net total disbursement(s) made by Golds Gym to any officer/owner during the month of February 2015 was $3,128.00 (February Monthly Operating Report page 6).

[C] …[that the only]..payments made [by Gold's Gym] to any principal, executive or insider during the reporting period… [the month of May 2015] (including draws, cash withdrawals, dividends, loans or gross salaries) were:

$1,700 paid to Maureen Suhadolnik salary on 05/04/15
$1,000 paid to Maureen Suhadolnik salary on 05/21/15
(May Monthly Operating Report pages 10 & 11)

[D] That the net total disbursement(s) made by Golds Gym to any officer/owner during the month of May 2015 was $2,165.20 (May Monthly Operating Report page 6).

[E] …[that the only] payments made [by Gold's Gym] to any principal, executive or insider during the reporting period [the month of June 2015](including draws, cash withdrawals, dividends, loans or gross salaries) were:

$2,000 paid to Maureen Suhadolnik salary on 06/05/15
(June Monthly Operating Report pages 10 & 11)

[F] That the net total disbursement(s) made by Golds Gym to any officer/owner during the month of June 2015 was $1,564.00 (June Monthly Operating Report page 6).

[G] That Gold's Gym's total cash flow for the month of May 2015 was receipts of $50,822.48 and disbursements of $48,072.49 and did not include receipts from loans or disbursements for payments on notes (May Monthly Operating Report page 6).

[H] That Gold's Gym's total cash flow for the month of July 2015 was receipts of $52,888.99 and disbursements of $48,731.72 and did not include receipts from loans or disbursements for payments on notes (July Monthly Operating Report pages 6).

[I] That Golds Gym did not borrow any money from anybody during the months of May, June or July 2015 (May, June and July Monthly Operating Report pages 10 question #9).

21. The Defendant received directly from Gold's Gym the following:

[A] on February 20, 2015 - $1,645.98 cash;

[B] on February 20, 2015 - $1,493.50 cash;

[C] on February, 20 2015 - $1,034.50 cash;

[D] on February, 20 2015 - $823.02 cash;[2]

[E] on May 7, 2015 - $1,997.08 cash;[3]

[F] on June 22, 2015 - $1,000 "check";

[G] on June 27, 2015 - $550 "check".

22. The Defendant received various indirect payments from Gold's Gym including:

Gold's Gym payment of $372.50 daily (week days) during the months of May, June and July 2015 on installment payments due to Ironwood Finance Inc. (Ironwood) on a Note (Ironwood I loan) executed by the Defendant. [4] Ironwood wired $13,410.00 into Gold's Gym's Operating Account on 05/14/15, and Gold's Gym wired out on May 15, 2015 $8,000.00 and on May 22, 2015 $5,400.00 to Nasruddin or to another individual/entity at Nasruddin's direction. The total paid by Gold's Gym on the Ironwood I loan is not clear but is estimated to be at least $14.527.50.

23. The Defendant either received the benefit of additional indirect installment payments or Gold's Gym borrowed funds without court authority:

[A] Gold's Gym paid $447.00 daily (week days) during the months of July August and September 2015 installment payments due Ironwood on a second loan (Ironwood II loan). It is unclear who is obligated on the Ironwood II loan, as the documents have not been produced. Golds Gym received on July 15, 2015, $8,562.50 from Ironwood, and on July 16, 2015, Gold's Gym transferred $8,400 to Nasruddin. Beginning on July 16, 2015, Golds Gym appears to have ceased making the installment

---

[2] The February 2015 Gold's Gym Operating Account notes four separate cash withdrawals on 02/20/15. The Defendant's personal bank account statement for February 2015 notes one cash deposit on February 20, 2015 in the amount of $4,997. At a Rule 2004 exam, the Defendant admitted that the four cash withdrawals were the same money as the deposit.

[3] The May 2015 Gold's Gym Operating Account notes one cash withdrawal of $1,997.08 on 05/07/15. The Defendant's personal bank account statement for May 2015 notes one cash deposit on May 7, 2015 for $5,000.00. At a Rule 2004 exam, the Defendant admitted that $1,997.08 cash withdrawal was part of the deposit although the Defendant did not explain the origin of the balance of the deposit.

[4] On 05/12/15, the Defendant executed the Note with Ironwood Financing Inc. for $15,000.00. The Defendant stated that the purpose of this loan was to finance the purchase of equipment to be used by the joint venture. At the Rule 2004 Exam, the Defendant admitted no new equipment was ever received.

payments on the Ironwood I loan and began making daily installment payments of $447.00 on the Ironwood II loan. The total paid by Gold's Gym on the Ironwood II loan is not clear but is estimated to be approximately $18,327.00. [5]

[B] Gold's Gym paid $175.00 daily (week days) in installment payments to Capital Stack II (Capital Stack) on a loan (Capital Stack loan). It remains unclear who is obligated on the Capital Stack loan, as the loan documents have not been produced. Golds Gym received on July 31, 2015, $7,190.00 from Capital Stack. On August 3, 2015 Gold's Gym transferred $6,250.00 to a third party at the direction of Nasruddin. Beginning on August 3, 2015, Golds Gym began making daily installment payments of $175.00 (per week day) to Capital Stack. The total paid on the Capital Stack loan remains unclear but is estimated to be approximately $4,725. [6]

24 The total cash which was deposited into and distributed out of Gold's Gym's Operating Account during the month of May 2015 included:

[A] $40,000 received from Spencer on 05/18/15 and two disbursements of $20,000 each on May 18, 2015 to Nasruddin or to an individual/entity at Nasruddin's direction;

[B] $5,000 received from Spencer on 05/22/15 and a disbursement of $5,400 on May 22, 2015 to Nasruddin or to an individual/entity at Nasruddin's direction;

[C] $30,000 received from Spencer on 05/28/15 and a disbursement of $10,000 on May 28, 2015 and a second disbursement of $20,000 on May 28, 2015 to Nasruddin or to an individual/entity at Nasruddin's direction.

25. The above representations are material and false as they failed to account for the sum paid directly to the Defendant, they failed to account for installment payments made by Gold's Gym on the Ironwood I loan, they either failed to account for what was paid on the Ironwood II loan and the Capital Stack loan for the Defendant, or, in the alternative, the falsely represented that Gold's Gym had not borrowed any funds from anybody during the months of May and/or July 2015, and they failed to account for all receipt and disbursements in May 2015.

26. The Defendant knew the representations when made were false.

27. The representations made by the Defendant under oath and the threat of perjury constitute false oaths and/or false accountings under 11 U.S.C. §727 (a)(4)(A) and were all made after October 21st 2014, that being a date one year before the Defendant filed for bankruptcy protection and were made in connection with the Gold's Gym bankruptcy.

---

[5] No loan documents for the "second" Ironwood loan have been produced. The Defendant's explanation for these payments was that she had received a "second loan" from Ironwood similar to the previous loan and for the same purpose.

[6] No loan documents for this Capital Stack loan have been produced. The Defendant's explanation for these payments was that this was another loan similar to the two Ironwood loans . .

WHEREFORE, Plaintiff respectfully prays that the Defendant should be barred from receiving a discharge under 11 U.S.C. § 727(a)(7) incorporating 11 U.S.C. § 727(a)(4) and for such other and further relief that this court deems just and equitable.

**COUNT II – FAILURE TO SATISFACTORILY EXPLAIN LOSS OF ASSETS**
**11 U.S.C. § 727(a)(5) AND 11 U.S.C § 727(a)(7)**
**(failure to explain transfer of assets )**

28. The UST realleges and incorporates herein all of the allegations contained in paragraphs 1 through 15 above.

29. Pursuant to 11 U.S.C. § 727(a)(5): The court shall grant the debtor a discharge, unless –

> the debtor has failed to explain satisfactorily….any loss of assets or deficiency of assets to meet the debtor's liabilities; *11 U.S.C. § 727(a)(5)*

30. Under 11 U.S.C. § 727(a)(5), an Objector must establish only that at one time the Debtor had or claimed to have certain assets which have now disappeared. The burden then shifts to the debtor to "satisfactorily" explain what happened to them. *In re Martin* 698 F. 2nd 883 (7th Cir. 1983) and *In re Dolin* 799 F.2nd 251 (6th Circuit 1986). While the Court has discretion in determining what is a satisfactory explanation, generally to be satisfactory, an explanation must demonstrate both that the debtor exhibited good faith in explaining what happened and good faith in conducting its financial affairs. *In re Mantra* 314 B.R. 723 (E.D. Ill. 2004) and *In re Patrick*, 290 B.R. 306 (E.D. Mich 2003).

31 Pursuant to 11 U.S.C. § 727(a)(7), in part: The court shall grant the debtor a discharge unless

> the debtor has committed any act specified in paragraph …(5) [§ 727(a)(5)] of this subsection, on or within one year before the date of the filing of the petition, …in connection with another case, under this title or under the Bankruptcy Act, concerning an insider. *11 U.S.C. § 727(a)(7)*

32. During the time that Gold's Gym was in chapter 11, Gold's Gym had in the Gold's Gym Operating Accounts and then transferred from that account:

[A] $2,500 wire transfer on February 25 2015 to Nas'Anno
[B] $5,000 wire transfer on February 26 2015 to Nas'Anno
[C] $5,000 wire transfer on April 30, 2015 to either Nasruddin or to an individual or entity at the direction of Nasruddin.
[D] $5,000 transferred on August 18, 2015 to either Nasruddin or to an individual or entity at the direction of Nasruddin.
[E] the UST realleges and incorporates herein all of the allegations contained in paragraph 21 above

[F] the UST realleges and incorporates herein all of the allegations contained in paragraph 22.

[G] the UST realleges and incorporates herein all of the allegations contained in paragraph 23

33. No satisfactory explanation has been provided for the transfer of these assets/funds.

34. The payments or transfers as well as the Defendant's failure to provide a satisfactory explanation for above noted payments or transfers occurred on or since October 21, 2014, that being on or after a date one year before the Defendant filed for bankruptcy protection and in the Gold's Gym bankruptcy.

WHEREFORE, Plaintiff respectfully prays that the Defendant should be barred from receiving a discharge under 11 U.S.C. § 727(a)(7) incorporating 11 U.S.C. § 727(a)(5) and for such other and further relief that this court deems just and equitable.

**COUNT III– FAILURE KEEP RECORDS**
**11 U.S.C. § 727(a)(3) AND 11 U.S.C § 727(a)(7)**
**(failure to keep records )**

35. The UST realleges and incorporates herein all of the allegations contained in paragraphs 1 through 15 above.

36. Pursuant to 11 U.S.C. § 727(a)(3): The court shall grant the debtor a discharge, unless –

> the debtor has failed to keep or to preserve any recorded information… from which the debtor's …business transactions might be ascertained…
> *11 U.S.C. § 727(a)(3)*

37. Pursuant to 11 U.S.C. § 727(a)(7), in part: The court shall grant the debtor a discharge unless –

> the debtor has committed any act specified in paragraph …(3) [§ 727(a)(3)] of this subsection, on or within one year before the date of the filing of the petition, …in connection with another case, under this title or under the Bankruptcy Act, concerning an insider. 11 U.S.C. § 727(a)(7)

38. While Gold's Gym was operating under the protection of chapter 11:

[A] The UST realleges and incorporates herein all of the allegations contained in paragraph 23 [ A]; and

[B] The UST realleges and incorporates herein all of the allegations contained in paragraph 23 [B].

39. Although requested, no records have been produced which would allow the UST or any interested party to ascertain the appropriateness of Gold's Gyms transfers or payment of the Ironwood II and/or the Capital Stack installments.

40. The payments or transfers as well as the Defendant's failure to maintain or to provide documentation occurred on or since October 21, 2014, that being on or after a date one year before the Defendant filed for bankruptcy protection and in connection with the Gold's Gym bankruptcy.

WHEREFORE, Plaintiff respectfully prays that the Defendant should be barred from receiving a discharge under 11 U.S.C. § 727(a)(7) incorporating 11 U.S.C. § 727(a)(3) and for such other and further relief that this court deems just and equitable.

**COUNT III– TRANSFER OF ASSETS BY INSIDER**
**UNDER 11 U.S.C. § 727(a)(2)(A) AND 11 U.S.C. § 727(a)(7)**
**(transfer of funds from Gold's Gym operating account)**

41. The UST realleges and incorporates herein all of the allegations contained in paragraphs 1 through 15 above.

42. Pursuant to 11 U.S.C. § 727(a)(2) and in relevant part: The court shall grant the debtor a discharge, unless –

> the debtor, with intent to hinder, delays or defraud a creditor or an officer of the estate …..transferred, removed, destroyed, mutilated, or concealed ….property of the estate…
> *11 U.S.C. § 727(a)(2)*

43 To be successful on a claim under *11 U.S.C. § 727(a)(2)*an objector must prove (in relevant parts) the transfer or concealment by the debtor of property of the estate, with an intent to hinder, delay or defraud the estate creditors. *In re Krehl 86 F.3rd 737 (7th Cir 1996)* and *In re Watman 301 F3rd 3 (1st Cir 2002).*

44. Pursuant to 11 U.S.C. § 727(a)(7), in relevant part, the court shall grant the debtor a discharge unless:

> the debtor has committed any act specified in paragraph …(2) [§ 727(a)(2)]of this subsection, on or within one year before the date of the filing of the petition, …in connection with another case, under this title or under the Bankruptcy Act, concerning an insider. *11 U.S.C. § 727(a)(7)*

45. During the time that Gold's Gym was in chapter 11, the following assets of Gold's Gym were transferred out of Gold's Gym's Operating Bank Account ("Transfers"):

[A] The UST realleges and incorporates herein all of the allegations contained in paragraphs 21 [A] thru 21[G] above.

[B] The UST realleges and incorporates herein all of the allegations contained in paragraph 22.

[C] The UST realleges and incorporates herein all of the allegations contained in paragraphs 23[A] and 23[B] above.

[D] The UST realleges and incorporates herein all of the allegations contained in paragraphs 32[A] thru 32 [D] above.

[E] Gold's Gym paid at least $650 on August 18, 2015 for representation for the Defendant in her personal bankruptcy.

46. The Transfers were completed in an effort to facilitate the joint venture and/or with the intent to conceal, defraud, hinder or delay payment to the creditors of Gold's Gym.

47 The Transfers were made on or after October 21, 2014, that being a date one year before the Defendant filed for bankruptcy protection, and in connection with the Gold's Gym bankruptcy.

WHEREFORE, Plaintiff respectfully prays that the Defendant should be barred from receiving a discharge under 11 U.S.C. § 727(a)(7) / 11 U.S.C. § 727(a)(2) and for such other and further relief that this court deems just and equitable.

**COUNT IV § 727(a)(4)(A)**
**FALSE OATH**
**(Suhadolnik bankruptcy SOFA)**

48 The UST realleges and incorporates herein the allegations contained in paragraphs 1 through 11.

49. Pursuant to 11 U.S.C. § 727(a)(4) in relevant parts: The court shall grant the debtor a discharge, unless –

> the debtor knowingly and fraudulently in or in connection with the case made a false oath or account; *11 U.S.C. § 727(a)(4)*

50 As part of the Suhadolnik Bankruptcy, the Defendant was required to disclose:

> …all other property….transferred….within two years preceding the commencement of this case…. (Suhadolnik bankruptcy Doc #1 - SOFA paragraph 10).

51. In response to paragraph 10 of the Defendant's Statement of Financial Affairs, (Suhadolnik Bankruptcy Doc #1) the Defendant responded "None" representing that she had not made any transfers within the two years preceding the commencement of her case on October 20, 2015.

52. On or about the following dates, the Defendant transferred the following sums to Nasruddin or to another individual/entity identified by Nasruddin and at his direction:

[A] on February 26 2015, $5,000.00, and

[B] on May 7, 2015, $5,000.00

53. The Defendant's aforesaid sworn statements constitute false oaths under 11 U.S.C. §727(a)(4)(A).

54. The Defendant's aforesaid false sworn statements are material.

55. The Defendant knowingly and fraudulently made her representation or made the same in reckless disregard of its truthfulness.

**WHEREFORE**, Plaintiff respectfully prays that the Defendant should be barred from receiving a discharge under 11 U.S.C. § 727(a)(4), and for such other and further relief that this court deems just and equitable.

Respectfully submitted,

NANCY J. GARGULA,
United States Trustee

*/s/ Timothy E. Ruppel*
Timothy E. Ruppel
Attorney for U.S. Trustee

United States Department of Justice
Office of the United States Trustee
401 Main Street, Suite 1100
Peoria, Illinois 61602
Phone: (309) 671-7854, ext. 230
Fax: (309) 671-7857
E-mail: tim.ruppel@usdoj.gov